UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:                                          Chapter 11
213 BOND STREET, INC.,                          Case No. 16-45132 (NHL)

                              Debtor.
------------------------------------------------------------x

## FIRST AMENDED DISCLOSURE STATEMENT IN CONNECTION WITH FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION <u>PROPOSED BY THE DEBTOR</u>

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL *BUT HAS NOT YET BEEN APPROVED BY THE COURT.***

**PICK & ZABICKI LLP**
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000
Douglas J. Pick, Esq.
Eric C. Zabicki, Esq.

*Counsel to the Debtor*

# I. SUMMARY

213 Bond Street, Inc., the debtor and debtor-in-possession herein (the "Debtor"), provides this First Amended Disclosure Statement (the "Disclosure Statement"), pursuant to §1125(b) of title 11 of the United States Code (the "Bankruptcy Code"), to all of its known Creditors, Interest Holders and other parties in interest for the purpose of soliciting acceptances of its proposed First Amended Chapter 11 Plan of Reorganization (the "Plan"). The Plan has been filed with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") and a copy of the same is attached hereto as **Exhibit "A"**. By Order dated _____ ___, 2017, this Disclosure Statement was approved by the Bankruptcy Court as containing "adequate information" of a kind, and in sufficient detail, to enable a hypothetical reasonable investor typical of the Debtor's Creditors to make an informed decision whether to accept or reject the Plan and/or whether or not to object to Confirmation of the Plan.

**The Debtor strongly urges that you read this Disclosure Statement because it contains a summary of the Plan provisions and important information concerning the Debtor's financial affairs, the administration of the Debtor's bankruptcy estate and the anticipated recovery by Creditors of the Debtor.**

A finding by the Bankruptcy Court that the Disclosure Statement contains adequate information pursuant to §1125 of the Bankruptcy Code does not mean, indicate or imply in any manner that the Bankruptcy Court recommends either an acceptance or a rejection of the Plan by a party eligible to vote thereon.

A glossary of terms frequently used in this Disclosure Statement is set forth in Article 1 of the Plan. Capitalized terms utilized, but not defined herein, have the meanings ascribed to them in the Plan.

## A. THE DEBTOR AND ITS REAL PROPERTY

The Debtor is the fee owner of certain real property located at 213 Bond Street, Brooklyn, New York 11217, Block 405, Lot 7 (the "Property"). The Property consists of a 20' x 75' lot with a four story, three unit building situated thereon (the "Building"). The Property is presently encumbered by, at a minimum, liens and encumbrances securing amounts which total approximately $600,000. The Property had been the subject of a pre-petition foreclosure action commenced by the first mortgage holder. The Debtor sought protection under the Bankruptcy Code for the purposes of staying further proceedings in the foreclosure action while the Debtor sought out a suitable purchaser for the Property. The stock of the Debtor serves as security for the Debtor's repayment of an obligation totaling approximately $200,000. The Debtor's unsecured debts, including non-lien real property tax obligations, are believed to total less $75,000.

As more fully discussed herein, the Plan contemplates a sale of the Property to the Successful Bidder at an Auction which will be conducted in accordance with the Bid Procedures. In furtherance thereof, the Property is presently being listed by the Broker with an asking price of $1,250,000 with the goal of obtaining a "stalking horse" offer which can then be subjected to any higher or better offers at the Auction. The Debtor will be filing a

motion seeking approval of Bid Procedures in connection with the sale of the Property, however the Debtor reserves the rights to seek approval of a sale of the Property on a private sale basis. The Auction will be conducted prior to the Confirmation Hearing and the closing on the sale of the Property will take place subsequent to Confirmation of the Plan.

Under the Plan, the Net Sale Proceeds will be used to fully pay the Allowed Amount of all Statutory Fees, Administrative Claims, Secured Claims, Priority Tax Claims and General Unsecured Claims, with interest at the applicable rate, if any. In the unlikely event that the Net Sale Proceeds are insufficient to fully fund these distributions: (a) any shortfall will be funded by a contribution from the Debtor's principal or by an alternative source as may be approved by the Bankruptcy Court; or (b) the Debtor will withdraw its request for Confirmation of the Plan.

### B. THE PLAN

The table below provides a summary of the classification and treatment of Claims and Interests under the Plan. The figures set forth in the table below are the Debtor's best current estimate of the aggregate amount of Claims and Interests in the Case. These estimates are based upon an analysis of the Schedules filed by the Debtor, proofs of claim filed by Creditors to date, and certain other documents of public record. As more fully discussed below, the Bar Date for the filing of proofs of claim on account of pre-Petition Date obligations of the Debtor has not yet passed. As such, there can be no assurance that Claims and Interests will be allowed by the Bankruptcy Court in the amounts set forth below.

**The Plan assumes that funds will be available at Confirmation sufficient to fully satisfy all Statutory Fees, Administrative Claims, Priority Tax Claims, Secured Claims and General Unsecured Claims, with interest at the applicable rate, if any, with any amounts remaining after full payment of such Claims being distributed to the holder of the Interests (*i.e.*, stock) in the Debtor. As such, there are no impaired classes under the Plan.**

| Class and Estimated Amount | Type of Claim or Interest | Summary of Treatment Under Plan |
| --- | --- | --- |
| Unclassified – $6,500 (Estimated) | Statutory Fees | All fees and charges payable to the U.S. Trustee, including those owed under 28 U.S.C. §1930(a)(6) and any applicable interest thereon, including any applicable interest, shall be fully paid. Such fees and charges that are due on or prior to the Effective Date, shall be paid no later than ten (10) days after the Effective Date. Such fees, together with any applicable interest thereon, that may become due after the Effective Date shall be paid as they become due by the Post-Confirmation Debtor until the entry of a final decree closing the Chapter 11 Case, or until the Chapter 11 Case is converted or dismissed, whichever occurs earlier. |

| Class and Estimated Amount | Type of Claim or Interest | Summary of Treatment Under Plan |
|---|---|---|
| **Unclassified –** $100,000 (Estimated) | Administrative Claims | Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, each holder of an Allowed Administrative Claim shall receive the full amount of its Allowed Administrative Claim: (a) in Cash on the Effective Date or as soon thereafter as is reasonably practicable; or (b) on such other terms as mutually agreed to by the holder of an Allowed Administrative Claim. |
| **Unclassified –** $0 (Estimated) | Priority Tax Claims | Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, each holder of an Allowed Priority Tax Claim will receive on account of such claim the full amount of its Allowed Priority Tax Claim, with interest at the applicable rate, if any, in Cash on the Effective Date or as soon thereafter as is reasonably practicable. |
| **Class 1 –** $47,500 (Estimated) | NYC Secured Claim | **Unimpaired.** Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, the holder of the Allowed Class 1 NYC Secured Claim will receive on account of such claim the full amount of the Allowed Class 1 NYC Secured Claim, with interest at the applicable rate, if any, in Cash on the Effective Date or as soon thereafter as is reasonably practicable. |
| **Class 2 –** $310,000 (Estimated) | Chase Secured Claim | **Unimpaired.** Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, the holder of the Allowed Class 2 Chase Secured Claim will receive on account of such claim the full amount of the Allowed Class 2 Chase Secured Claim, with interest at the applicable rate, if any, in Cash on the Effective Date or as soon thereafter as is reasonably practicable. |
| **Class 3 –** $290,000 (Estimated) | SBA Secured Claim | **Unimpaired.** Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, the holder of the Allowed Class 3 SBA Secured Claim will receive on account of such claim the full amount of the Allowed Class 3 SBA Secured Claim, with interest at the applicable rate, if any, in Cash on the Effective Date or as soon thereafter as is reasonably practicable. |

| Class and Estimated Amount | Type of Claim or Interest | Summary of Treatment Under Plan |
|---|---|---|
| **Class 4 –** $200,000 (Estimated) | Promover Secured Claim | **Unimpaired.** Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, the holder of the Allowed Class 4 Promover Secured Claim will receive on account of such claim the full amount of the Allowed Class 4 Promover Secured Claim, with interest at the applicable rate, if any, in Cash on the Effective Date or as soon thereafter as is reasonably practicable. |
| **Class 5 –** < $500 (Estimated) | General Unsecured Claim | **Unimpaired.** Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, and with the exception of Paolo Secondo who has waived any distribution under the Plan on account of his Class 5 General Unsecured Claim against the Debtor, each holder of an Allowed Class 5 General Unsecured Claim will receive on account of such claim the full amount of its Allowed Class 5 General Unsecured Claim, with interest at the applicable rate, if any, in Cash on the Effective Date or as soon thereafter as is reasonably practicable. |
| **Class 6** N/A | Interests | **Unimpaired.** The Allowed Class 6 Interests of Paolo Secondo are not affected by the Plan and Mr. Secondo shall continue to retain and maintain such Interests in the Debtor and the Post-Confirmation Debtor following Confirmation of the Plan. Additionally, to the extent that any Net Sale Proceeds are available after full payment of all Statutory Fees, Administrative Claims, Priority Tax Claims, Secured Claims in Class 1, Class 2, Class 3 and Class 4, and General Unsecured Claims in Class 5, the holder of the Allowed Class 6 Interests shall receive the entirety of the available amount. |

## C.    CONFIRMATION OF THE PLAN

The Bankruptcy Court has scheduled a hearing to consider the Debtor's request for Confirmation of the Plan to be held on _____ ___, 2017 at _____ a.m./p.m. before the Honorable Nancy Hershey Lord, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Courtroom 2529, Brooklyn, New York 11201. The Bankruptcy Court has directed that objections, if any, to Confirmation of the Plan be filed and served on or before _____ ___, 2017 at 5:00 p.m. in the manner described under "ACCEPTANCE AND CONFIRMATION -- Confirmation Hearing."

At the Confirmation Hearing, the Bankruptcy Court will determine, among other things, whether the requirements of §1129(a) of the Bankruptcy Code have been satisfied

with regard to the Plan, in which event the Bankruptcy Court may enter an order confirming the Plan. The Debtor intends to seek Confirmation of the Plan at the Confirmation Hearing. The Debtor believes that the Plan satisfies all applicable requirements of §1129(a) and §1129(b) of the Bankruptcy Code. See "ACCEPTANCE AND CONFIRMATION -- Requirements for Confirmation" for a description of such requirements. Confirmation makes the Plan binding upon the Debtor, its Interest Holders, all Creditors and other parties regardless of whether they have accepted the Plan.

## D.    VOTING MATTERS

Since the Allowed Claims in Class 1, Class 2, Class 3, Class 4 and Class 5, and the Interests in Class 6 are unimpaired under the Plan, said Classes are deemed to have accepted the Plan. **Accordingly, the Debtor is not soliciting ballots on the acceptance or rejection of the Plan from any Class of Claims or Interests. Holders of such Claims or Interests are still entitled to object to Confirmation of the Plan.**

## E. NOTICE TO HOLDERS OF CLAIMS AND INTERESTS

This Disclosure Statement is being furnished by the Debtor to its known Creditors and Interest holders pursuant to §1125(b) of the Bankruptcy Code in connection with a solicitation of acceptances of the Plan. The Plan is incorporated herein by reference.

The purpose of this Disclosure Statement is to enable you, as a Creditor or Interest Holder to make an informed decision in exercising your right to accept or reject the Plan and/or to object to Confirmation of the Plan.

**THIS DISCLOSURE STATEMENT CONTAINS IMPORTANT INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN PROPOSED BY THE DEBTOR. PLEASE READ THIS DOCUMENT WITH CARE.**

**THIS DISCLOSURE STATEMENT IS NOT A SOLICITATION FOR CAPITAL CONTRIBUTIONS TO THE DEBTOR FROM ANY ENTITY.**

**THE PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY ANY BANKRUPTCY COURT, THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE FAIRNESS OR MERITS OF THE PLAN OR UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.**

The historical information concerning the Debtor has been prepared by the Debtor to the best of its knowledge and belief and based upon information available to the Debtor such as filings made with the Bankruptcy Court and other courts and the Debtor does not vouch for its accuracy. The estimates of Claims set forth herein may vary from the final

amounts of Claims allowed by the Bankruptcy Court. While every effort has been made to ensure the accuracy of all such information, the information presented herein is unaudited and has not been examined, reviewed or compiled by independent public accountants.

This Disclosure Statement contains a summary of certain provisions of the Plan and the transactions contemplated thereunder, and may contain descriptions of certain other related documents. While the Debtor believes that these summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents. Reference is made to the Plan and the documents referred to herein and therein, if any, for a complete statement of the terms and provisions thereof. In the event of any inconsistency between the terms of the Plan and this Disclosure Statement, the terms of the Plan shall be controlling.

In reviewing the Plan and this Disclosure Statement, the reader should give special attention to "RISK FACTORS."

No statements or information concerning the Debtor or its assets, future business operations, results of operations or financial condition, are authorized by the Debtor other than as set forth in this Disclosure Statement and the exhibits hereto (including the Plan).

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein. The delivery of this Disclosure Statement shall not create, under any circumstances, an implication that there has been no change in the facts set forth herein since the date hereof.

This Disclosure Statement is intended for the sole use of Creditors and Interest Holders to make an informed decision about the Plan. Each holder of a Claim or Interest should review this Disclosure Statement and all exhibits hereto (including the Plan) before casting a ballot. Holders of Claims or Interests are urged to consult with their own legal and financial advisors.

No solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and §1125 of the Bankruptcy Code. No Person has been authorized to use or promulgate any information concerning the Debtor or its business or the Plan, other than the information contained in this Disclosure Statement and the exhibits hereto. You should not rely on any information relating to the Debtor or its businesses or the Plan other than that contained in this Disclosure Statement and the exhibits hereto.

## II. RECOMMENDATION

In the Debtor's opinion, the treatment of Creditors and Interest Holders under the Plan provides a greater possible recovery than is likely to be achieved under any other alternatives including liquidation under Chapter 7 of the Bankruptcy Code. See "ALTERNATIVES TO THE PLAN." The Debtor believes that in a Chapter 7 liquidation, Administrative Expenses may not be paid and other than to the Secured Creditors, no creditor would receive any distributions on account of its Allowed Claim.

**THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND INTEREST HOLDERS, AND URGES EACH CREDITOR TO ACCEPT THE PLAN.**

### III. EVENTS LEADING TO CHAPTER 11

The Debtor is a New York business corporation formed on March 21, 2007. The Debtor's operations are managed by its sole officer, director and shareholder, Paolo Secondo.

The Debtor acquired title to the Property by deed dated June 19, 2007. At that time, the Property was non-residential vacant land. The original purchase price paid by the Debtor for the Property was $325,000.

In October 2007, and for the purposes of developing the Property, the Debtor borrowed the principal sum of $146,250 from JPMorgan Chase Bank, N.A. ("Chase") and granted Chase a first priority mortgage against the Property as security therefor. In January 2009, the Debtor borrowed an additional $278,750 from Chase and granted Chase an additional mortgage on the Property as security therefor. In April 2010, the two mortgages were consolidated into a single first priority mortgage in the principal amount of $423,678.46 (which has since been reduced to approximately $310,000). The amounts borrowed by the Debtor from Chase were further secured by guarantees executed by Paolo Secondo and Galata Inc. (a non-debtor entity owned/controlled by Mr. Secondo).

Also, in February 2012, the Debtor borrowed an additional $352,000 (which has since been reduced to approximately $290,000) from the Empire State Certified Development Corporation (the "ESCDC") as security for which the Debtor granted ESCDC a subordinate mortgage and security agreement. Said subordinate mortgage and security agreement were contemporaneously assigned by the ESCDC to the U.S. Small Business Administration.

Thereafter, in or about May/June 2016, the Debtor borrowed an additional $200,000 from Promover Capital LLC ("Promover"). As security therefor, Mr. Secondo granted Promover a security interest against his shares in the Debtor.

The funds borrowed by the Debtor from the foregoing lenders were utilized by the Debtor to construct the Building and to pay other ongoing operating expenses. Each of the units in the Building is presently rented pursuant to leases with the Debtor. The Debtor's monthly rent roll with regard to the Building is presently $11,000.

On or about August 31, 2015, Chase issued a notice advising the Debtor that it was allegedly in default under its loan agreements on account of a purported delinquency in the payment of real property taxes and prior bankruptcy filings by Mr. Secondo and Galato Inc. who were guarantors of the Debtor's obligations to Chase. As of September 2015, Chase ceased making automatic withdrawals of the monthly mortgage payments from the Debtor's bank account and subsequently refused to accept a check from the Debtor for the mortgage payments that were due for the months of September through and including December 2015.

7

On January 5, 2016, Chase commenced an action in the Supreme Court of the State of New York, County of New York (the "State Supreme Court"), titled *JPMorgan Chase Bank, N.A. v. 213 Bond Street, Inc., et al.*, Index No. 500077/2016, seeking to foreclose the consolidated first mortgage against the Property (the "Foreclosure Action"). The Debtor appeared in and contested the Foreclosure Action. However, by Order dated November 2, 2016, the State Supreme Court granted Chase's motion for summary judgment and for an order of reference. No judgment of foreclosure of sale or order of reference was entered by the State Supreme Court prior to the Debtor's chapter 11 filing.

In order to avoid the loss of the Property in the Foreclosure Action while seeking a suitable purchaser for the Property, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court on November 15, 2016 (the "Petition Date"). Thereafter, the Debtor filed its Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, and Statement of Financial Affairs (the "Schedules") with the Bankruptcy Court pursuant to Rule 1007(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtor remains in possession of its property and continues to operate and manage its business and affairs as a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code. No committee, trustee or examiner has been appointed with regard to the Debtor's case. The Debtor's Chapter 11 Case is a "single asset realty" case within the purview of §101(51B).

## IV. SIGNIFICANT EVENTS IN THE CHAPTER 11 CASE

### A.    Retention of Professionals

Section 327(a) of the Bankruptcy Code provides that a debtor in possession or a trustee, with the court's approval, may employ one or more accountants or other professional persons that do not hold or represent an interest adverse to the estate and that are disinterested persons to represent or assist the debtor in carrying out its duties under the Bankruptcy Code.

The Debtor was initially represented by the law firm Morrison Tenenbaum PLLC as its general bankruptcy counsel with regard to its chapter 11 case. Morrison Tenenbaum PLLC subsequently withdrew and was replaced by the law firm Pick & Zabicki LLP as substitute general bankruptcy counsel to the Debtor pursuant to an Order entered by the Bankruptcy Court.

The Debtor also recently filed an application with the Bankruptcy Court seeking authority to retain Friedman-Roth Realty Services LLC as its real estate broker to market the Property for sale to potential purchasers (the "Broker"). Although no Order has yet been entered approving its retention by the Debtor, the Broker is already listing and showing the Property.

### B.    Claim-Related Matters

On January 19, 2017, and upon the Debtor's application, the Bankruptcy Court entered an Order (the "Bar Date Order") establishing dates by which any proofs of claim on

account of pre-Petition Date obligations must be filed (the "Bar Date"). Pursuant to the Bar Date Order, proofs of claim on account of pre-Petition date obligations of the Debtor are required to be filed by non-governmental entities by not later than March 17, 2017 and by governmental agencies by not later than May 15, 2017. A notice of the Bar Date has been mailed to all known or potential creditors of the Debtor.

The Debtor does not anticipate that any proofs of claim that may be filed in compliance with the Bar Date Order will deviate materially from the liquidated, non-contingent and/or undisputed claims identified by the Debtor in the Schedules. Accordingly, at this time, the Debtor does not anticipate the filing of any objections to any proofs of claim, provided however that the Debtor reserves the right to object to any Proof of Claim that may subsequently be filed in accordance with Article 8 of the Plan.

### C.    Motion to Voluntarily Dismiss Chapter 11 Case

On November 30, 2016, the Debtor filed a motion with the Bankruptcy Court seeking to voluntarily dismiss its Chapter 11 Case. Said motion was subsequently withdrawn by the Debtor in favor of pursuing confirmation of a chapter 11 plan.

### D.    Efforts to Sell the Property

Prior to and following the Petition Date, the Debtor, with the assistance of its professionals, has been marketing the Property to potential purchasers in the hopes of obtaining an offer which would generate sufficient funds to satisfy the Liens and obligations against the Property and result in a distribution to unsecured creditors. The Debtor had entered into extensive negotiations with a potential purchaser regarding a sale of the Property for $1,000,000.00 with a twenty-five (25) year "leaseback" to the Debtor which would have served as a "stalking horse" offer for the Property. However, those negotiations ultimately failed.

Thereafter, the Debtor engaged the Broker to market the Property for sale. The Property is presently being listed by the Broker with an asking price of $1,250,000. Once an acceptable "stalking horse" offer is received (i.e., an offer in an amount sufficient to fully pay all of the Distributions contemplated under the Plan), the Debtor will file a motion with the Bankruptcy Court seeking approval of the sale of the Property to the "stalking horse" bidder or to such other party making the highest and best bid at an Auction. The Debtor will also file a separate motion with the Bankruptcy Court seeking to establish the Bid Procedures that will govern the Debtor's proposed sale of the Property.

## V. SUMMARY OF THE PLAN

The following summary of the terms of the Plan is qualified in its entirety by reference to the provisions of the Plan, which is incorporated herein by reference.

### A. CLASSIFICATION OF CLAIMS AND INTERESTS

Article 3 of the Plan classifies the various Claims against and Interests in the Debtor into three classes of Claims and one class of Interests:

| | |
|---|---|
| Class 1 - | NYC Secured Claim |
| Class 2 - | Chase Secured Claim |
| Class 3 - | SBA Secured Claim |
| Class 4 - | Promover Secured Claim |
| Class 5 - | General Unsecured Claims |
| Class 6 - | Interests |

As set forth in Article 2 of the Plan, pursuant to §1123(a)(1) of the Bankruptcy Code, Administrative and Priority Tax Claims against the Debtor have not been classified. See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims.

**Class 1 – NYC Secured Claim.** Class 1 consists of the Allowed Secured Claim, if any, held by the New York City Dept. of Finance ("NYC") secured by a valid, enforceable Lien on property of the Estate under applicable non-bankruptcy law that was perfected as of the Petition Date and is not otherwise avoidable, and which is estimated to total approximately $47,500. Class 1 is not impaired under the Plan.

**Class 2 – Chase Secured Claim.** Class 2 consists of the Allowed Secured Claim, if any, held by Chase secured by a valid, enforceable Lien on property of the Estate under applicable non-bankruptcy law that was perfected as of the Petition Date and is not otherwise avoidable, and which is estimated to total approximately $310,000. Class 2 is not impaired under the Plan.

**Class 3 – SBA Secured Claim.** Class 3 consists of the Allowed Claim, if any, held by the SBA secured by a valid, enforceable Lien on property of the Estate under applicable non-bankruptcy law that was perfected as of the Petition Date and is not otherwise avoidable, and which is estimated to total approximately $290,000. Class 3 is not impaired under the Plan.

**Class 4 – Promover Secured Claim.** Class 4 consists of the Allowed Claim, if any, held by Promover secured by a valid, enforceable Lien on property of the Estate under applicable non-bankruptcy law that was perfected as of the Petition Date and is not otherwise avoidable, and which is estimated to total approximately $200,000. Class 4 is not impaired under the Plan.

**Class 5 - General Unsecured Claims.** Class 5 consists of any and all Allowed Claims against the Debtor other than Statutory Fees, Administrative Claims, Priority Tax Claims, or Secured Claims. Included within Class 5 is a General Unsecured Claim held by

the Debtor's principal, Paolo Secondo, in the amount of $277,522 on account of loans made to the Debtor. As an accommodation to the Debtor's creditors, Mr. Secondo has agreed to waive any distribution under the Plan on account of his Class 5 General Unsecured Claim. The Debtor estimates that any other Allowed Class 5 General Unsecured Claims total less than $500.

**Class 6 - Interests.** Class 6 consists of all equity Interests in the Debtor, all of which are held by Paolo Secondo. Class 6 is not impaired under the Plan.

### B. TREATMENT OF CLAIMS AND INTERESTS CLASSIFIED UNDER THE PLAN

Articles 4 and 5 of the Plan provide for the treatment of impaired and unimpaired Claims and Interests classified in Article 3 of the Plan as follows:

**Class 1 – NYC Secured Claim.** The Allowed Class 1 NYC Secured Claim shall be treated in accordance with §1124(1) of the Bankruptcy Code as follows: Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, the holder of the Allowed Class 1 NYC Secured Claim will receive on account of such claim the full amount of the Allowed Class 1 NYC Secured Claim, with interest at the applicable rate, if any, in Cash on the Effective Date or as soon thereafter as is reasonably practicable.

**Class 2 – Chase Secured Claim.** The Allowed Class 2 Chase Secured Claim shall be treated in accordance with §1124(1) of the Bankruptcy Code as follows: Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, the holder of the Allowed Class 2 Chase Secured Claim will receive on account of such claim the full amount of the Allowed Class 2 Chase Secured Claim, with interest at the applicable rate, if any, in Cash on the Effective Date or as soon thereafter as is reasonably practicable.

**Class 3 – SBA Secured Claim.** The Allowed Class 3 SBA Secured Claim shall be treated in accordance with §1124(1) of the Bankruptcy Code as follows: Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, the holder of the Allowed Class 3 SBA Secured Claim will receive on account of such claim the full amount of the Allowed Class 3 SBA Secured Claim, with interest at the applicable rate, if any, in Cash on the Effective Date or as soon thereafter as is reasonably practicable.

**Class 4 – Promover Secured Claim.** The Allowed Class 4 Promover Secured Claim shall be treated in accordance with §1124(1) of the Bankruptcy Code as follows: Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, the holder of the Allowed Class 4 Promover Secured Claim will receive on account of such claim the full amount of the Allowed Class 4 Promover Secured Claim, with interest at the applicable rate, if any, in Cash on the Effective Date or as soon thereafter as is reasonably practicable.

**Class 5 - Unsecured Claims.** Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, and with the exception of Paolo Secondo who has waived any distribution under the Plan on account of his Class 5 General Unsecured Claim against the

Debtor, each holder of an Allowed Class 5 General Unsecured Claim will receive on account of such claim the full amount of its Allowed Class 5 General Unsecured Claim, with interest at the applicable rate, if any, in Cash on the Effective Date or as soon thereafter as is reasonably practicable.

**Class 6 – Interests.**  The Allowed Class 6 Interests of Paolo Secondo are not affected by the Plan and Mr. Secondo shall continue to retain and maintain such Interests in the Debtor and the Post-Confirmation Debtor following Confirmation of the Plan. Additionally, to the extent that any Net Sale Proceeds are available after full payment of all Statutory Fees, Administrative Claims, Priority Tax Claims, Secured Claims in Class 1, Class 2, Class 3 and Class 4, and General Unsecured Claims in Class 5, Mr. Secondo, as the holder of the Allowed Class 6 Interests, shall receive the entirety of the available amount.

## C. TREATMENT OF NON-CLASSIFIED CLAIMS

Pursuant to §1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims entitled to priority treatment under §507(a)(1) of the Bankruptcy Code or Claims of Governmental Units entitled to priority pursuant to §507(a)(8) of the Bankruptcy Code. Article 2 of the Plan provides for the manner of treatment of such non-classified Claims.

**Statutory Fees.**  The Debtor has a statutory duty to pay all outstanding amounts that may be due to the United States Trustee upon Confirmation, together with any fees due pursuant to 28 U.S.C. §1930(a)(6) and any applicable interest thereon, through the date of the entry of a final decree closing the chapter 11 case, conversion of the case to chapter 7 or dismissal of the case.  All fees and charges payable to the U.S. Trustee, including any applicable interest, shall be fully paid.  Such fees and charges that are due on or prior to the Effective Date, shall be paid no later than ten (10) days after the Effective Date.  Such fees, together with any applicable interest thereon, that may become due after the Effective Date shall be paid as they become due by the Post-Confirmation Debtor until the entry of a final decree closing the Chapter 11 Case, or until the Chapter 11 Case is converted or dismissed, whichever occurs earlier.

**Administrative Claims.**  Administrative Claims are defined as the costs and expenses of administration of this Case, allowable under §503(b) of the Bankruptcy Code, other than Bankruptcy Fees. Administrative Claims include Claims for the provision of goods and services to the Debtor after the Petition Date, the liabilities incurred in the ordinary course of the Debtor's business after the Petition Date, Claims of professionals, such as attorneys, appraisers, and accountants, retained pursuant to an order of the Bankruptcy Court, for compensation and reimbursement of expenses under §330 of the Bankruptcy Code, and tax claims for the period from the Petition Date to the Effective Date of the Plan.

Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid in Cash in full on (i) the later of (a) the Effective Date, (b) the date payment of such Claim is due under the terms thereof or applicable law, or (c) three business days after such Claim becomes an

Allowed Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Debtor and the holder of such Claim; provided, however, that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto.

**Professional Fees.** Section 330 of the Bankruptcy Code sets the standard for the determination by the Bankruptcy Court of the appropriateness of fees to be awarded to Professionals retained in a case under the Bankruptcy Code. All Professionals shall file final applications for approval of compensation and reimbursement of reasonable and necessary expenses pursuant to §330 of the Bankruptcy Code no later than sixty (60) days following the Effective Date. Any such application timely filed shall be deemed to be an Administrative Claim, subject to the entry of a Final Order by the Bankruptcy Court approving such application. Objections to any Professional's application for compensation or reimbursement must be timely filed and served upon such Professional, the Debtor and the Disbursing Agent in accordance with the Bankruptcy Rules or any order entered by the Bankruptcy Court. Upon entry of a Final Order approving an application, the fees shall be paid within three (3) days thereafter or in accordance with this Plan or as otherwise agreed to by the Professional and the Debtor.

**Priority Tax Claims.** Generally, Priority Tax Claims are (subject to certain timing and date of assessment limitations) unsecured claims of "governmental units" (as defined in the Bankruptcy Code) based upon: (a) taxes measured by income or gross receipts; (b) property taxes; (c) withholding taxes; (d) employment taxes; (e) excise taxes; (f) customs duties; and (g) penalties based on actual pecuniary losses relating to the foregoing. These Priority Tax Claims include, among others, all taxes measured by income or gross receipts attributable to the three-year period immediately preceding the Petition Date (*i.e.*, from November 15, 2013 through the Petition Date).

Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge, the holders of Allowed Priority Tax Claims shall be paid in full on the Effective Date or as soon thereafter as is reasonably practicable.

## D. DISPUTED CLAIMS AND INTERESTS

Article 8 of the Plan contains a mechanism for resolving disputes concerning the amount of certain Claims or Interests asserted against the Debtor or its estate by any Entity.

**Time to Object.** Unless otherwise ordered by the Bankruptcy Court, the Debtor may file and serve any objection to any Claim or Interest at any time, but in no event after the later to occur of (i) ninety (90) days following the Bar Date, (ii) sixty (60) days after the date proof of such Claim or Interest or a request for payment of such Claim is filed.

**Prosecution of Objections.** After the Effective Date, the Debtor, only, shall have authority to settle, compromise, withdraw or resolve objections to Claims.

**Disallowance.** Except as provided in Section 6.1 of the Plan, any Disputed Claim for which no Proof of Claim has been filed on or prior to the Bar Date shall be disallowed and expunged as of the Effective Date.

## E. DISTRIBUTIONS UNDER THE PLAN

Article 8 contains provisions governing the making of distributions on account of Claims and Interests. In general, any payments, distributions or other performance to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest shall be deemed to be timely made if made on or within five days following the later of (i) the Effective Date or (ii) the expiration of any applicable objection deadline with respect to Disputed Claims or Interests or (iii) such other times provided in the Plan. All Cash payments to be made by the Disbursing Agent pursuant to the Plan shall be made by check drawn on a domestic bank.

**Disbursing Agent.** The Debtor's counsel (Pick & Zabicki LLP) shall be the Disbursing Agent to make distributions under the Plan. Pursuant to the terms of the Plan, the Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. The Disbursing Agent shall not be liable for any distributions made in accordance with the Plan. The Disbursing Agent shall not be liable to the Debtor, any creditor or any other person, firm or corporation, for any error of judgment or for any mistake of law or fact or any act done, caused to be done, or omitted to be done, by the Disbursing Agent or any of its agents. The Disbursing Agent shall be liable only for acts of willful misconduct, gross negligence or breach of fiduciary duty by itself or such agents. The Disbursing Agent will not be bonded and all cash received by the Disbursing Agent shall be kept in a segregated escrow account maintained at CapitalOne Bank and subject to FDIC rules and regulations. The Debtor is advised that Pick & Zabicki, LLP has insurance coverage presently in effect in an amount sufficient to fully cover any improper loss or diminishment in the amounts being held in escrow; provided however that said insurance does not cover any intentional misappropriation (*e.g.*, embezzlement, larceny, etc.) by any member of Pick & Zabicki, LLP.

Distributions to holders of Allowed Claims and Allowed Interests shall be made: (1) at the addresses set forth on the Proofs of Claim or Proofs of Interests filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address. If the distribution to the holder of any Claim or Interest is returned to the Disbursing Agent as undeliverable, the Disbursing Agent will make reasonable attempts to locate the holder of the Allowed Claim or Allowed Interest. Any further undeliverable distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to Section 8.13 of this Plan.

## F.    UNCLAIMED DISTRIBUTIONS

Any Cash or other property to be distributed under the Plan shall be reallocated to those Creditors with Allowed Claims if it is not claimed by the Entity entitled thereto before the later of (i) three months after the Effective Date or (ii) thirty days after an Order allowing the Claim of that Entity becomes a Final Order, and such Entity's claim shall be deemed to be reduced to zero.

## G.    DISTRIBUTIONS WITH RESPECT TO DISPUTED CLAIMS

During the pendency of any objection to any Claim or Interest, no distribution under the Plan will be made to the holder of such Claim or Interest. There will be set aside and reserved on behalf of such Disputed Claim or Interest, however, such cash or property as the holder thereof would be entitled to receive in the event such Claim or Interest was an Allowed Claim or an Allowed Interest on the date of such distribution. On any date that distributions are to be made under the terms of the Plan, the Disbursing Agent shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash or property that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative Expenses or as priority claims pursuant to §§503 and 507 of the Bankruptcy Code, (ii) claims of Governmental Units for any tax and (iii) any amount due but not payable on the Effective Date on account of Administrative Expenses or claims entitled to priority pursuant to §§503 and 507 of the Bankruptcy Code). The Disbursing Agent may also segregate any interest, dividends or proceeds of such Cash. Such Cash together with any interest, dividends or proceeds thereof, be held in trust for the benefit of the holders of all such Disputed Claims pending determination of their entitlement thereto.

Within ten (10) days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash or property, including any interest, dividends or proceeds thereof, to which a holder is then entitled, if any, with respect to any formerly Disputed Claim that has become an Allowed Claim. To the extent practicable, the Disbursing Agent may invest any Cash or other property segregated on account of a Disputed Claim, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by §345 of the Bankruptcy Code; provided, however, that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds other than for liability for the violation of federal securities laws or any related regulations promulgated thereunder by the Securities and Exchange Commission and/or Financial Industry Regulatory Authority.    The Disbursing Agent could be liable to the Debtor if its conduct or acts are determined to be fraudulent, criminal, or *ultra vires*, or if there is a disclosure of confidential information that causes damage to the Debtor. Any escrowed, reserved or segregated funds will be held at a banking institution that is an authorized banking depository in the Eastern District of

New York.

## H.    COMPLIANCE WITH TAX REQUIREMENTS

In connection with the Plan, the Disbursing Agent, shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements; provided, however, that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under §1146 of the Bankruptcy Code.

## I.    EFFECTIVE DATE

The Effective Date of the Plan is defined to mean the later of: (i) one (1) Business Day after the Confirmation Order becomes a Final Order; or (ii) the date all conditions to the Effective Date have been satisfied or waived by the entity entitled by the Plan to waive such condition.

## J.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

As of the Effective Date, the Unexpired Leases between the Debtor, as landlord, and: (a) Frank Russo and Martina Russo; (b) Trenino di Casella Foods Inc.; and (c) Amiteo Inc. shall be deemed assumed by the Debtor and assigned to the Successful Bidder for the Property in accordance with the provisions and requirements of §§365 and 1123 of the Bankruptcy Code. All other Executory Contracts or Unexpired Leases to which the Debtor is a party as of the Effective Date which were not previously rejected, assumed, or assumed and assigned by the Debtor shall be deemed rejected and disaffirmed under the Plan as of the Effective Date in accordance with the provisions and requirements of §§365 and 1123 of the Bankruptcy Code. Any claim for damages arising from such rejection shall be filed with the Court no later than thirty (30) days after receipt of notice of the occurrence of the Effective Date.

## K.    IMPLEMENTATION

In furtherance of implementation of the Plan, the Debtor shall conduct the Auction of the Property and, thereafter, shall consummate the sale of the Property to the Successful Bidder consistent with the Bid Procedures and the Approval Order. Pursuant to §1146(a) of the Bankruptcy Code, the deed conveying the Property shall be an instrument of transfer in connection with or in furtherance of the Plan and shall not be subject to tax under any law imposing a stamp tax, real estate Transfer Taxes, mortgage recording tax or similar tax, and, to the extent provided by §1146(a) of the Bankruptcy Code, if any, shall not be subject to any state, local or federal law imposing sales tax. All proceeds of the sale shall be paid to Creditors and Interests Holders in order of priority in accordance with the Plan. Except as set forth elsewhere in this Plan all payments required to be made under this Plan shall be made by the Disbursing Agent in accordance with the terms of this Plan from the Net Sale Proceeds and any cash on hand. In the unlikely event that the Net Sale Proceeds are insufficient to fully fund these distributions: (a) any shortfall will be funded by a

contribution from the Debtor's principal or by an alternative source as may be approved by the Bankruptcy Court; or (b) the Debtor will withdraw its request for Confirmation of the Plan.

## M.    MANAGEMENT OF THE DEBTOR

On and after the Effective Date, and notwithstanding the sale of the Property, pending final distributions to Creditors and the resolution of Disputed Claims that would receive a distribution based on available funds, the Debtor shall not be dissolved and, therefore, its operations shall continue to be the general responsibility of Paolo Secondo, as sole officer, director and shareholder of the Debtor, who shall have the responsibility for the management, control and operation of the Debtor, pursuant to the Debtor's by-laws and applicable law. Mr. Secondo will only take a salary or otherwise receive compensation from the Post-Confirmation Debtor if there are operating revenues sufficient therefor after payment of the Debtor's ongoing obligations and those under the Plan.

## N.    PRESERVATION OF RIGHTS OF ACTION

Except as otherwise provided in the Plan, or in any contract, instrument, release or other agreement entered into in connection with the Plan, the Debtor shall retain, and in accordance with his determination of the best interest of the estate, may enforce any claims, rights and causes of action (i) arising under §§510 and 544 through 550 of the Bankruptcy Code or (ii) belonging to the Debtor as of the Petition Date, or the Estate of the Debtor, and arising under any provision of state or federal law, or any theory of statutory or common law or equity, including, but not limited to, any cause of action asserted, or which may hereafter be asserted.

## O.    MODIFICATION AND REVOCATION OF THE PLAN

The Plan may be altered, amended or modified by the Debtor, at any time before the substantial consummation of the Plan, as provided in §§1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. Section 1127 of the Bankruptcy Code authorizes the proponent of a plan of reorganization to modify such plan at any time prior to confirmation of the plan so long as the plan, as modified, continues to meet certain requirements of §§1122 and 1123 of the Bankruptcy Code with respect to the classification of Claims and Interests and the contents of a plan. Prior to Confirmation, if a proponent files modifications to a plan, pursuant to §1127(a) "the plan as modified becomes the plan." No order of the Court is required to modify the Plan under the terms of §1127(a); however, the proponent of a modification to a plan must comply with §1125 of the Bankruptcy Code with respect to the plan as modified. In other words, if a modification materially alters the treatment of any Creditor or Interest Holder who has accepted the Plan, the Debtor will be required to make additional disclosures to those Creditors or Interest Holders whose treatment has been materially and adversely altered and give such Creditors or Interest Holders an opportunity to change their votes.

The Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order. If the Debtor revokes or withdraws the Plan, or if no Confirmation

17

Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor; or prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor.

## P.    RETENTION OF JURISDICTION

The Plan contains detailed provisions providing for the retention of jurisdiction by the Bankruptcy Court over the Case for the purposes of, *inter alia,* determining all disputes relating to Claims or Interests and other issues presented by or arising under the interpretation, implementation or enforcement of the Plan, and to determine all other matters pending on the date of confirmation.

## Q.    RISK FACTORS

The Plan is a liquidating Plan and as such the Debtor believes that after the sale of the estate's properties and assets (including the Property), the Debtor will not have any remaining business to administer except the distributions due under the Plan from the sale proceeds and miscellaneous assets such as claims arising under §§544 through 550 of the Bankruptcy Code with respect to pre and post-petition transfers of its assets.

Therefore the Debtor believes that the confirmation of the Plan is not likely to be followed by further financial reorganization of the Debtor.

## VI. ACCEPTANCE AND CONFIRMATION

## A.    CONFIRMATION HEARING

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan. The Confirmation Hearing is scheduled to commence on _____ ___, 2017 at ____ a.m./p.m., **before the Honorable Nancy Hershey Lord, United States Bankruptcy Judge, in the United States Bankruptcy Court, Southern District of New York, 271-C Cadman Plaza East, Courtroom 2529, Brooklyn, New York 11201**. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing.

The Bankruptcy Court has directed that objections, if any, to Confirmation of the Plan be filed and served so as to be received **on or before** _____ ___, **2017 at 5:00 p.m.** by: (i) Pick & Zabicki, LLP, 369 Lexington Avenue, 12th Floor, New York, New York 10017, Attn: Douglas J. Pick, Esq.; and (ii) the Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014.

## B.    REQUIREMENTS FOR CONFIRMATION

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of §1129 of the Bankruptcy Code have been satisfied, in which event the

Bankruptcy Court will enter an order confirming the Plan. These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified Claims and Interests in a permissible manner, (ii) the contents of the Plan comply with various requirements of the Bankruptcy Code, (iii) the Debtor has proposed the Plan in good faith, (iv) the Debtor has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan and the Case, (v) the Plan is in the "best interest" of all Creditors and Interest Holders, (vi) the Plan is feasible, and (vii) the Plan has been accepted by the requisite number and amount of Creditors or Interest Holders in each Class entitled to vote on the Plan, or that the Plan may be confirmed without such acceptances. The Debtor believes that all of these conditions have been or will be met prior to the Confirmation Hearing.

**Best Interest Test.** The so-called "best interest" test requires that each impaired Creditor and impaired Interest Holder either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such entity would receive or if the Debtor were to be liquidated under Chapter 7 of the Bankruptcy Code.

Should the Plan or an alternative plan not be confirmed, the Debtor believes that one or more of its secured creditors will be granted relief from the automatic stay provided by §362 of the Bankruptcy Code which will result in the imminent foreclosure upon the Liens on the Property under New York State law.

In the event the Bankruptcy Court does not lift the automatic stay and an alternative plan is not confirmed, the Debtor is of the view that the Debtor's case may be converted to Chapter 7. A sale of the Property under Chapter 7 would not, in the Debtor's view, generate sufficient proceeds to satisfy all Priority Claims, Secured Claims, Administrative Claims, and General Unsecured Claims and also provide for a distribution on the Interests in the Debtor.

To determine what the holders in each Class of Claims or Interest would receive if the Debtor were liquidated under Chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets and properties in a Chapter 7 liquidation case. The amount that would be available for satisfaction of Allowed Claims against and Allowed Interests in the Debtor would consist of the proceeds resulting from the disposition of the Debtor's assets, augmented by the cash held by the Debtor at the commencement of the Chapter 7 case which in this case is minimal. Such amount would be reduced by the amount of any Claim or Claims secured by the Debtor's assets, the costs and expenses of the liquidation, and such additional Administrative Claims and Priority Claims that may result from the termination of the Debtor's business.

The costs of liquidation under Chapter 7 would become Administrative Claims with the highest priority against the proceeds of liquidation. Such costs would include the fees payable to attorneys, financial advisors, appraisers, accountants and other professionals that a Chapter 7 trustee may engage to assist in the liquidation. In addition, Chapter 7 costs would include any liabilities incurred or assumed pursuant to the transactions necessary to

effectuate the liquidation of the Property. Moreover, claims entitled to administrative priority may arise by reason of any breach or rejection of any executory contracts entered into by the Debtor during the pendency of the case in Chapter 11.

After satisfying Administrative Claims arising in the course of the Chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time this Case was pending under Chapter 11, including compensation for attorneys, financial advisors, appraisers, accountants and other professionals retained by the Debtor.

After consideration of the effects that a Chapter 7 liquidation would have on the proceeds available for distribution including (i) the increased costs and expenses of a Chapter 7 liquidation arising from fees payable to the attorneys, financial advisors, appraisers, accountants and other professionals that a Chapter 7 trustee may engage to assist in the liquidation, (ii) the erosion in value of the Debtor's assets in a Chapter 7 case in the context of the expeditious liquidation required under Chapter 7 and the "forced sale" atmosphere that would prevail, and (iii) the potential increase in Claims which would be satisfied on a priority basis or on a parity with the Claims of general Unsecured Creditors, the Debtor believes that holders of Claims would be unlikely to receive any distribution on account of their Claims except under the Plan.

**Liquidation Analysis.** The Debtor has concluded that the Plan provides to each Creditor a recovery with a present value greater than the present value of the distribution which such Creditor would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. Although a liquidation analysis estimating distributions under a hypothetical liquidation of a debtor's assets is commonly submitted in support of a proposed plan, here where the debtor's assets are to be sold under a Plan and the proceeds distributed in accordance with the priority scheme established under the Bankruptcy Code and applicable non-bankruptcy law, the actual liquidation value will be established and a hypothetical analysis will serve little purpose.

**Feasibility.** For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor. Because the Plan contemplates the sale of the Debtor's sole asset, feasibility is not relevant.

**Confirmation With the Acceptance of Each Impaired Class.** A chapter 11 plan may be confirmed if each impaired class of claims or interests accepts the plan. Classes of claims or interests which are not impaired are deemed to have accepted the plan. A class is impaired if the legal, equitable or contractual rights attaching to the claims or interests of that class are modified other than by curing defaults and reinstating maturities or by payment in full in cash.

As discussed above, there are no impaired Classes under the Plan and, thus, each Class of Claims and Interests is deemed to have accepted the Plan and may not vote to accept or reject the Plan.

## VII. EFFECT OF CONFIRMATION

### A. DISCHARGE

Except as otherwise provided in the Plan, all Persons shall be precluded and enjoined from asserting against the Debtor, and its respective successors, assets or properties, or against any property that is distributed, or is to be distributed under the Plan, any other or further Claim or Interest based upon any acts or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

Except as otherwise provided under the Plan, or a Final Order of the Bankruptcy Court, any judgment at any time obtained, to the extent that such judgment is a determination of the liability of the Debtor with respect to any debt discharged pursuant to the Plan shall be null and void and of no force and effect, regardless of whether a Proof of Claim or Proof of Interest therefor was filed or deemed filed and, except as otherwise provided in the Plan, all Creditors holding Claims against the Debtor, or holders of Interests in the Debtor shall be precluded from asserting against the Debtor, and any of its assets or the Property or any property distributed under the Plan, any other or further Claims or Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, and the Confirmation Order shall permanently enjoin all Creditors and holders of Interests, their successors and assigns, from enforcing or seeking to enforce any such Claims or Interests.

### B.    RELEASES

Section 1125(e) of the Bankruptcy Code, commonly referred to as the "safe harbor," protects persons acting in good faith from civil claims arising in connection with solicitations of acceptances of plans of reorganization or participating in the offer, issuance, sale or purchase of a security under the Plan. Pursuant to §1125(e), as set forth in Article 10 of the Plan, neither the Debtor, nor any of their Interest Holders, officers, managers, directors, nor any of their agents or employees (acting in such capacity) nor any professional person employed by any of them, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, prosecution, dissemination, Confirmation, consummation or administration of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or the distribution of property under the Plan, or any other action taken or omitted to be taken in connection with the Case or the Plan, except as may be expressly provided for in such agreements or documents, and except for willful misconduct or gross negligence. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense to any claim or liability released pursuant to this Article 10 of the Plan.

### C.    INJUNCTION

Except (i) as otherwise provided in the Plan (ii) as otherwise provided under Final Order entered by the Bankruptcy Court or (iii) with respect to the Debtor's obligations under the Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently

enjoin on and after the Confirmation Date (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from any property of the Estate, including the Property sold under the Plan, (ii) the creation, perfection or enforcement of any lien or encumbrance against any property of the Estate, including the Property sold under the Plan, or (iii) any Claim or Interest discharged under the Confirmation Order as against the Debtor's Property sold under the Plan.

Except as otherwise provided in the Plan or the Confirmation Order, the entry of the Confirmation Order, shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset from the Debtor's property transferred under the Plan.

## VIII. ALTERNATIVES TO THE PLAN

If the Plan is not confirmed by the Bankruptcy Court the alternatives may include (a) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code or (b) the promulgation and confirmation of an alternative plan of reorganization.

The Debtor believes that the Plan provides a recovery to all Creditors equal to or greater than would be obtainable in a Chapter 7 liquidation.

## IX. CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The following summary of certain U.S. Federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to each holder of an Allowed Unsecured Claim. Each holder of an Allowed General Unsecured Claim is urged to consult his own tax advisors. This summary does not cover all potential U.S. federal income tax consequences that could possible arise under the Plan and does not address the Plan's U.S. federal income tax consequences for any holder of an Unsecured Claim that is a partnership (or other pass-through entity) or otherwise subject to special tax rules.

This summary is based upon the laws in effect on the date of this Disclosure Statement and existing judicial and administrative interpretations thereof, all of which are subject to change, possibly with retroactive effect. Holders of Allowed Unsecured Claims should consult their own tax advisors as to the Plan's specific federal, state, local and foreign income and other tax consequences.

In the event of a distribution to Class 5 General Unsecured Claims, each Holder will recognize gain or loss upon the receipt of such pro-rata share equal to the difference, if any, between the "amount realized" by such Holder and the Holder's adjusted basis in his, her or its Allowed Unsecured Claim. Any gain or loss realized by a Holder should constitute ordinary income or loss to her unless the Unsecured Claim is a capital asset. If an Unsecured Claim is a capital asset, and it has been held for more than one year, such Holder will realize long term capital gain or loss.

The tax consequences to Holders will differ and will depend on factors specific to each Holder, including but not limited to: (i) whether the Holder's Unsecured Claim (or portion thereof) constitutes a claim for principal or interest; (ii) the origin of the Holder's

Claim; (iii) the type of consideration received by the Holder in exchange for the Unsecured Claim; (iv) whether the Holder is a United States person or foreign person for tax purposes; (iv) whether the Holder reports income on the accrual or cash basis method; (v) whether the Holder has taken a bad debt deduction or otherwise recognized loss with respect to an Unsecured Claim.

**THERE ARE MANY FACTORS WHICH WILL DETERMINE THE TAX CONSEQUENCES TO EACH HOLDER. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES, UNCERTAIN. THEREFORE IT IS IMPORTANT THAT EACH HOLDER OBTAIN HIS, HER OR ITS OWN TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH HOLDER AS A RESULT OF THE PLAN.**

**THE DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE**

**USED, AND CANNOT BE USED, BY ANY HOLDER FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON A TAX PAYER. THE DISCUSSION HEREIN WAS WRITTEN TO SUPPORT THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH HOLDER SHOULD SEEK ADVICE BASED UPON THE HOLDER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

## X. ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement, the Ballots and the other materials delivered together herewith and all deliveries, correspondence and questions, as the case may be, relating to the Plan should be directed to the Debtor's counsel, Pick & Zabicki LLP, 369 Lexington Avenue, 12th Floor, New York, New York 10017, Attn.: Douglas J. Pick, Esq., (212) 695-6000, dpick@picklaw.net.

Copies of all pleadings, orders, lists, schedules, proofs of claims or other documents submitted in these cases are on file in the Office of the Clerk of the United States Bankruptcy Court, at the United States Bankruptcy Court, Eastern District of New York, 271-C Cadman Plaza East, Brooklyn, New York 11201, and are available for public inspection Monday through Friday, between the hours of 9:00 a.m. and 5:00 p.m. Additionally, copies of all pleadings, orders, lists, schedules, proofs of claims or other documents submitted in this case may be viewed and printed over the Internet from the Bankruptcy Court's Electronic Case Filing system at http://www.nyeb.uscourts.gov.

## XI. CONCLUSION

The Debtor believes the Plan is in the best interests of all Creditors and Interest holders and strongly encourages all holders of Claims against and Interests in the Debtor to support the Plan.

Dated: New York, New York
February 1/8 2017

Respectfully submitted,

**213 BOND STREET, INC.**
Debtor-In-Possession

By: _____
Paolo Secondo, President

READ & APPROVED:

**PICK & ZABICKI LLP**
Counsel to the Debtor

By: _____
Douglas J. Pick, Esq.
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000

24